**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION**

CHRISTOPHER DEATON,
ADC #143472                                                                        PLAINTIFF

2:13CV00136-KGB-JTK

LARRY MAY, et al.                                                               DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge Kristine G. Baker.  Any party may serve and file written objections to this recommendation.  Objections should be specific and should include the factual or legal basis for the objection.  If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.  An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations.  The copy will be furnished to the opposing party.  Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.        Why the record made before the Magistrate Judge is inadequate.

2.        Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.      The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## DISPOSITION

## I.      Introduction

Plaintiff Christopher Deaton is a state inmate incarcerated at the Randall Williams Correctional Facility of the Arkansas Department of Correction (ADC).  He filed this action pursuant to 42 U.S.C. § 1983, alleging several constitutional violations by Defendants, together with a violation of the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1. Plaintiff seeks monetary and injunctive relief from the Defendants.

Pending before the Court are Defendants' Motions to Dismiss and for Summary Judgment (Doc. Nos. 108, 113).  Plaintiff filed Responses in opposition to the Motions (Doc. Nos. 118, 124-125).

## II.     Complaint (Doc. No. 2)

### A.      RLUIPA

Plaintiff filed this action on October 11, 2013, while incarcerated at the Varner Super Max

2

Unit of the ADC.  Plaintiff first alleges that he took a vow of the Nazarite and refused to cut his hair or shave, which placed him in violation of the ADC grooming policy.  (Doc. No. 2, p. 4)  He is therefore disciplined for failing to abide by the policy, and claims that the relief periods between his disciplinary sentences are shorter and more restrictive at the Varner Super Max (VSM) Unit than at the East Arkansas Regional Unit (EARU), where he previously was housed.  Defendants violate RLUIPA by failing to use the least restrictive means to implement the policy.  (Id., pp. 30-31) Plaintiff asks the Court to transfer him back to the EARU, or to another unit with a less restrictive grooming procedure.

      **B.**    **Punitive Isolation**

Plaintiff claims he was held in punitive isolation from September 28, 2012, until February 11, 2013, without relief, in violation of the Eighth and Fourteenth Amendments.

      1)    Due Process (Doc. No. 2, pp. 5-11)

Plaintiff alleges a due process violation as a result of his continuous confinement in punitive isolation for 135 days.

      2)    Cruel and Unusual Punishment (Doc. No. 2, pp. 11-17)

He also alleges that during this period of time he was confined without heat, subject to extreme cold conditions in violation of his Eighth Amendment right.  He claims Defendant Thorne falsified the temperature logs and Defendant May was aware of his situation, yet failed to remedy it.

      3)    Retaliation (Doc. No. 2, pp. 5-11)

He claims his placement in punitive for 135 days in extreme cold conditions was in retaliation for the filing of a prior lawsuit against Defendants.

4)      Equal Protection (Doc. No. 2, pp. 6-7)

He claims his confinement violated Equal Protection, because another inmate who also was confined for violations of the grooming policy received periodic 48-hour relief periods in between his punitive isolation sentences.

**C.    Retaliatory Transfer** (Doc. No. 2, pp. 27-30)

Plaintiff was transferred from the EARU to the VSM on July 8, 2013, after sending a letter to Defendant May advising him that if a resolution could not be met concerning the afore-mentioned complaints, he would be forced to take legal action. The VSM Unit is more restrictive in the enforcement of the ADC grooming policy. The transfer was made in retaliation for the exercise of his First Amendment rights.[1]

**III.    Motion to Dismiss**

Defendants moved to dismiss Plaintiff's RLUIPA claim as moot, because on or about November 23, 2014, Plaintiff shaved his head and face after his Nazarite Vow ended, and was transferred to the Randall Williams Unit. (Doc. No. 109)  In addition, the ADC modified its grooming policy, effective February 6, 2015, after the United States Supreme Court held that the grooming policy violated RLUIPA in Holt v. Hobbs, 135 S.Ct. 853 (2015).  Defendants later filed an Addendum notifying the Court that Plaintiff's appeal in an earlier case in which he challenged the constitutionality of the grooming policy was dismissed as moot, after Plaintiff shaved his beard and the ADC changed its grooming policy.  (Doc. No. 116, Deaton v. Arkansas Department of Correction, 2:12CV00186-JLH-JTK)

---

[1] By Order dated July 9, 2014, this Court dismissed Plaintiff's allegations concerning the grievance procedure, denied access to current events and a Christmas package. (Doc. No. 47)

In response to the Motion (Doc. No. 118), Plaintiff admits that his claim pursuant to RLUIPA is now moot, in light of his transfer to the Randall Williams Unit.  Therefore, the Court finds Defendants' Motion to Dismiss the RLUIPA claim should be granted.

## IV.    Summary Judgment Motion

Pursuant to Fed.R.Civ.P. 56(a), summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  See Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997).  "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'"  Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (other citations omitted)).  "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'"  Id. at 1135.  Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." Id.

### A.    Official Capacity Liability

The Court initially agrees with Defendants that Plaintiff's monetary claims against them in their official capacities are barred by sovereign immunity.  Will v. Michigan Dep't. of State Police, 491 U.S. 58, 65-66 (1989); Murphy v. State of Arkansas, 127 F.3d 750, 754 (8th Cir. 1997).

### B.    Exhaustion

5

Defendants next state that Plaintiff properly exhausted only two grievances relevant to the issues set forth in his Complaint, and the rest of the issues should be dismissed, pursuant to the Prison Litigation Reform Act (PLRA), and the ADC grievance policy, Administrative Directive (AD) 12-16.  In support, they present the declaration of Barbara Williams, ADC Inmate Grievance Supervisor, who stated that the ADC grievance policy required inmates to be specific as to the personnel involved, and to exhaust administrative remedies as to all defendants at all levels of the process prior to filing a lawsuit.  (Doc. No. 113-11, p. 2)  According to her review of Plaintiff's grievances during 2012 and 2013, Williams concluded as follows concerning the issues raised in his complaint:

1)      Heat - Plaintiff alleged he was housed in Isolation I at EARU from September 28, 2012, until January 25, 2013, without adequate heat.  Grievance EAM 13-00148 concerned Plaintiff's complaint to a non-party, William Gay, that he did not receive mental health counseling ant that the temperature of the cell was cold.  (Doc. No. 113-11, p. 4)  Grievance EAM 13-00217 concerned Plaintiff's complaint that Defendant Thorne subjected him to extremely cold temperatures. (Id.) Grievance EAM 13-00218 complained about the heat not working, but named no personnel.  (Id.) Williams concluded that Plaintiff did not properly exhaust any grievance about this issue against Defendants Burl, Payne, McNary, May, Jackson or Ball. (Id.)

2)      Isolation in retaliation - In grievance EAM 13-00379, Plaintiff alleged that he complained to  Defendant Payne about his incarceration in an Isolation cell for 121 days in retaliation for filing a prior lawsuit. (Id., p. 5) According to Williams, this was the only grievance Plaintiff exhausted as to this issue.  (Id.)

3)      Retaliatory transfer - In Grievance EAM 13-02749, Plaintiff complained

about his to VSM, but this was rejected as a non-grievable matter. (<u>Id</u>.)

  4) May failed to properly respond to Plaintiff's correspondence - Williams found no exhausted grievances related to this issue.  (<u>Id</u>., p. 6)

  5) Equal Protection - Williams found no exhausted grievance relating to Plaintiff's claim that he was treated differently than another inmate, Travis Manning, while housed in Isolation I.  (<u>Id</u>.)

  Based on Williams' conclusion that Deaton did not file or properly exhaust grievances against Defendants May, Burl, McNary, Jackson, or Ball, concerning the issues of the lawsuit, these Defendant ask to be dismissed.  (<u>Id</u>.)

  Plaintiff responded as follows:

  1) Heat - In addition to the grievance filed against Thorne, Plaintiff stated he filed a grievance on February 4, 2013 (EAM 13-00377), alleging that Defendant McNary used cold as a punishment against him.  In addition, he filed a grievance on January 14, 2013 (EAM 13-00218), alleging that ADC officials were using the extreme cold to punish him.  At that time, he did not know the identities of the responsible individuals and since discovery is not allowed in the grievance process, he stated he should not be held to the strict identification requirements of the policy.

  2) Isolation in retaliation - Plaintiff wrote a grievance on December 12, 2012 (EAM 12-05040), complaining that he was housed in punitive for eighty-two days, and named Defendants Burl, Payne, and McNary.  Although he appealed, he never received a response, and therefore, did all he was required to do.  He also filed a grievance on January 26, 2013 (EAM 13-00378), complaining that he was held in punitive for 120 days, which was exhausted, and another on January 27, 2013 (EAM 13-00379) saying he was in punitive 121 days and naming Defendant

Payne.  This grievance also was exhausted.  Finally, he filed a grievance on August 1, 2013 (EAM 13-2710), alleging Defendants Payne and McNary retaliated against him, but this was rejected as untimely.

   3) Retaliatory Transfer - Plaintiff filed a grievance on July 15, 2013 (EAM 13-2749),  specifically naming Defendants Burl, Ball and May, and alleging a retaliatory transfer.  However, this grievance was rejected based on the fact that transfers are not grievable.  Plaintiff argues that it was an appropriate grievance because retaliation issues are grievable.

   4) Equal Protection - Plaintiff stated he properly exhausted a grievance against Burl, Payne, and McNary concerning his placement in punitive for 135 days.  Although it did not specifically refer to an equal protection violation, he should not be required to exhaust as to all his theories of relief concerning a specific incident or series of incidents.

  According to the PLRA,

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a), unconst'l on other grounds, Siggers-El v. Barlow, 433 F.Supp.2d 811, 813 (E.D. Mich. 2006). The courts have interpreted this provision as a mandatory requirement that administrative remedies be exhausted prior to the filing of a lawsuit.  In Booth v. Churner, the United States Supreme Court held that in enacting the PLRA, "Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures."  532 U.S. 731, 741 (2001).  In addition, the United States Court of Appeals for the Eighth Circuit held in Chelette v. Harris, "[t]he statute's requirements are clear: If administrative remedies are available, the prisoner

must exhaust them.  Chelette failed to do so, and so his complaint must be dismissed, for 'we are not free to engraft upon the statute an exception that Congress did not place there.'" 229 F.3d 684, 688 (8th Cir. 2000) (quoting Castano v. Nebraska Dep't of Corrections, 201 F.3d 1023, 1025 (8th Cir. 2000).   In Johnson v. Jones, the Court held that "[u]nder the plain language of section 1997e(a), an inmate must exhaust administrative remedies *before* filing suit in federal court....If exhaustion was not completed at the time of filing, dismissal is mandatory."  340 F.3d 624, 627 (8th Cir. 2003) (emphasis in original).   Finally, in Jones v. Bock, the United States Supreme Court held that while the PLRA itself does not require that all defendants be specifically named in an administrative grievance, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."  549 U.S. 199, 218 (2007).

In addition, in Burns v. Eaton, the Eighth Circuit held that an exhausted grievance which named one officer involved in a pepper spray incident did not cover the plaintiff's allegations against a second officer named in his complaint, when the grievance did not name the second officer and did not include a description of his allegedly-unlawful actions. The Court stated, "this was not a case where 'prison officials decline[d] to enforce their own procedural requirements and opt[ed] to consider otherwise-defaulted claims on the merits.'" 752 F.2d 1136, 1141 (quoting Reed-Bey v. Pramstaller, 603 F.3d 322, 325 (6th Cir. 2010)).

In this case, the ADC grievance policy in effect clearly instructs inmates to "write a brief statement that is specific as to the substance of the issue or complaint to include the date, place, personnel involved or witnesses, and how the policy or incident affected the inmate..."  (Doc. No. 113-2, p. 5)  The policy contains a PLRA "Notice" which states, "[i]nmates are hereby advised that they must exhaust their administrative remedies as to all defendants at all levels of the grievance

procedure before filing a Section 1983 lawsuit...." (Id., p. 18)

Having reviewed the grievances submitted by the parties, the Court concludes as follows:

1)      Plaintiff did not exhaust any issue against Defendant Jackson - he was not named in, or referred to by his position, in any of the grievances submitted.  Therefore, he should be dismissed, without prejudice.

2)      Heat - Plaintiff exhausted his administrative remedies as to Defendant Thorne in EAM 13-00217. (Doc. No. 113-22) In addition, Plaintiff referred to Defendant Burl's knowledge of the problem and failure to take action in the appeal section of EAM 13-00218, which also concerned the cold temperatures. (Doc. No. 125, pp. 81-83)  Both these grievances were exhausted, and therefore, the claims against these two Defendants should not be dismissed on that basis. Plaintiff also filed a grievance on February 4, 2013, EAM 13, 00377, complaining that Defendant McNary authorized exhaust fans in the Unit, which contributed to extreme cold. (Doc. No. 125, p. 213)  However, the issue raised in the Complaint concerned the period of time from September 28, 2012, until January 25, 2013.  Therefore, the Court finds that this grievance does not correspond with the issue raised in the Complaint and that Plaintiff did not exhaust this issue as to Defendant McNary.

3)      Punitive/Retaliation - Plaintiff filed EAM 13-00379, complaining that Defendant Payne incarcerated him in a cell for 121 days without relief, in retaliation for the filing of a lawsuit.  (Doc. No. 113-14) In his appeal, he also claimed to have documentation to prove retaliation for filing a lawsuit against Payne and Burl.  (Id., p. 2)  This grievance was exhausted, and the Court finds that it adequately covers Plaintiff's retaliation allegations against both Payne and Burl.

Plaintiff filed EAM 12-05040 on December 12, 2012.  In this grievance, he complained about retaliation by Defendants McNary, Payne, and Burl, due to his continued incarceration in punitive isolation.  (Doc. No. 125, p. 197) He received a acknowledgment of his grievance on December 21, 2012, with a note that he would receive confirmation regarding the grievance by January 24, 2013.  (Id., p. 198)  Plaintiff claims he never received a response to his appeal from the Warden's decision, which he submitted on January 8, 2013.  (Id., p. 199)  The grievance procedure does not address situations where an appeal is not received, and Defendants do not specifically address Plaintiff's claim that he properly filed an appeal. Therefore, the Court finds that Plaintiff exhausted this issue with respect to Defendants McNary, Payne, and Burl.  (Doc. No. 125, pp. 188-190)  Although Plaintiff later filed a similar grievance, on August 1, 2013, EAM 13-2710, this grievance was rejected as untimely, with no decision on the merits.  (Doc. No. 125, pp. 217-219)

4)      Retaliatory Transfer - Plaintiff filed EAM 13-02729, and complained that he was transferred in retaliation for the filing of a lawsuit by Defendants Burl, May, and Ball (Doc. No. 125, p. 221) This grievance was rejected as non-grievable, because it concerned a transfer.  (Id., p. 222) However, allegations of retaliation, as noted in Plaintiff's appeal to the grievance, are grievable under the ADC policy.  (Doc. No. 125, p. 180)  Plaintiff's appeal was rejected on that same basis; therefore, the Court finds he adequately exhausted the issue within the meaning of the PLRA.

5)      Equal Protection - Plaintiff did not file or exhaust a grievance claiming that he was treated different from inmate Travis Manning, despite the fact that they were both incarcerated in isolation for violations of the ADC grooming policy.  Therefore, this claims should be dismissed, for failure to exhaust.

C.     **Punitive Isolation**

11

Plaintiff's allegation raises several issues: the due process implications of being housed in punitive isolation for 135 days in extremely cold conditions, the Eighth Amendment claim associated with those same cold conditions, and the claim that his placement was in retaliation for filing a lawsuit against Defendants. The Court will address each of these separately.

        1)        Due Process

According to Plaintiff's Complaint, he was sentenced to punitive isolation on September 28, 2012. (Doc. No. 2, p. 5) On October 19, 2012, he was written a disciplinary for failure to comply with grooming standards, and remained housed in isolation. (Id.)  He was placed back on punitive status on October 26, 2012, for noncompliance, and was removed from punitive status on November 25, 2012. (Id., p. 6)  However, he was not physically moved from the punitive unit to administrative segregation, per the normal routine.  (Id.)  He was off punitive status on November 25, 2012, and was returned to punitive status on December 19, 2012, to serve another disciplinary sentence.  (Id.)  Plaintiff again was removed from punitive status on January 18, 2013, and placed back on punitive on January 23, 2013.  (Id., p. 7)  During that entire time, however, he remained housed in an isolation unit.  His complaint is that he was housed in an isolation cell for 135 days, despite the fact that he was not on punitive status during thirty-seven of those days.  (Id., p. 10)

Defendants state these allegations fail to support a due process claim for relief because his stay in isolation did not constitute an atypical or significant hardship when compared with the ordinary incidents of prison life, as set forth in Sandin v. Connor, 515 U.S. 472, 484 (1995).   In response, Plaintiff states that the ADC policy, AD 12-24, provides that inmates on punitive status for thirty days should get a forty-eight hour relief period if serving consecutive sentences, during which time privileges should be restored. (Doc. No. 125)  He states although he was not on punitive

status from October 18, 2012, until October 26, 2012, and from November 25, 2012, until December 19, 2012, he was not removed from the isolation unit.  He also claims this violates American Correctional Standards which provides that inmates held in disciplinary detention for more than sixty days should be provided the same programs and services as those in the administrative segregation population.

According to the affidavit of Defendant Warden Dexter Payne, during Plaintiff's stay at the EARU from March, 2009 until July 8, 2013, Plaintiff was charged with many disciplinary violations for continually failing to abide by the policy. (Doc. No. 113-21, p. 2) Between September, 2012 and February, 2013, Deaton was charged with at least six major disciplinary violations. (Id.)  When an inmate receives a major disciplinary, he is placed on disciplinary court review (DCR) status prior to a hearing. (Id.) The punitive isolation time begins on the day the disciplinary is finalized, and the inmate's status is changed to punitive or disciplinary confinement. (Id.) Payne admitted that Deaton remained in the isolation area for about 129 days, but stated that he was given his property and privileges during the times his status was not punitive, with one exception. (Id., p. 3)  During one period of five days when Plaintiff was not on punitive status, he did not receive his property; when this was discovered, he was released from punitive five days early and given his property.  (Id.) Payne also stated that since Plaintiff was in continuous violation of the grooming policy, it was not unusual to keep him in isolation even during his non-punitive status, because of the needs of the unit concerning bed assignments of inmates. (Id., p. 4)  In addition, Deaton was on single man status, and therefore, was more appropriately assigned to an isolation area with single man cells. (Id.)

In Sandin v. Connor, the Court held that inmates do not possess a due process liberty interest in freedom from administrative or punitive segregation. 515 U.S. at 484.  Recognizing, however,

that states may themselves create certain protected liberty interests, the Court noted that those would be "limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause...imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id.  Following Sandin, the United States Court of Appeals for the Eighth Circuit Court held that an inmate's demotion from administrative segregation to punitive isolation was "not the sort of deprivation that qualifies as 'atypical and significant.'"   Kennedy v. Blankenship, 100 F.3d 640, 642 (1996).  The Court did not consider Kennedy's placement in punitive isolation as an atypical and significant event, even though the prisoner faced restrictions in privileges regarding mail, telephone, visitation, commissary, and personal possessions.  Furthermore, in Phillips v. Norris, the Court held that the absence of contact visitation, exercise privileges, and chapel rights for thirty-seven days did not constitute an atypical and significant hardship, stating, "[w]e have consistently held that a demotion to segregation, even without cause, is not itself an atypical and significant hardship."  320 F.3d 844, 847 (8th Cir. 2003).  See also Orr v. Larkins, 610 F.3d 1032, 1033 (8th Cir. 2010), where the court held that the plaintiff's incarceration in administrative segregation for nine months was not atypical and significant, or unconstitutional; Howard v. Collins, 129 F.3d 121, 1997 WL 710314 (8th Cir. 1997) (unpublished), where an eight-month stay in ad seg was not atypical and significant; and Jones v. Walker, No. 5:07CV00094-WRW-HDY (E.D.Ark. 2007), where an inmate's stay in ad seg for more than a year was not considered atypical and significant.

In Wycoff v. Nichols, an inmate served forty-five days in ad seg before the disciplinary charge against him was dismissed.  94 F.3d 1187, 1188 (8th Cir. 1996).  The Court found that the reversal of the case against the inmate constituted part of the due process he received, and cured any

alleged due process violations which may have occurred during the initial decision to sanction the inmate.  Id., at 1189.  The Court then noted that any claim concerning the plaintiff's placement in ad seg was controlled by Sandin, and nothing in the record supported a finding that his conditions of confinement were atypical and significant.  Id. at 1189-90.

Plaintiff argues that he was subject to extreme cold during that 135-day time period, which created an atypical and significant hardship.  Although he alleges he was confined during that entire period under extremely cold conditions, he did not file a grievance or otherwise notify anyone about the issue until December 31, 2012, when he states he complained about the temperatures to a non-party officer, Henry Williams, who submitted a maintenance request on January 4, 2013.  Plaintiff also claims he complained about the cold to non-party William Gay on January 4, 2013, who then advised security about the issue.  (Doc. No. 125, pp. 36, 105)  Plaintiff filed an informal resolution about the cold on January 6, 2013, which became formal grievance EAM 13-00148 on January 9, 2013.  (Id., pp. 39-41)  In response, Defendant Burl stated that security was notified and Defendant Thorne, the maintenance supervisor, did not find any mechanical problems.  (Id., pp. 40, 107)

According to the affidavit of Defendant Thorne, he services approximately 120 heating, ventilation, air conditioning and refrigeration units at the EARU.  (Doc. No. 113-3, p. 1) During the winter, the goal is to keep the temperature inside the building within a projected 4 degree range between 70-74 degrees Fahrenheit.  (Id.)  However, the temperature varies if officers adjust the setting or mechanical errors occur, and can take several hours to re-adjust in such situations.  (Id.)  Temperature readings also are taken and recorded in various areas of the prison twice daily.  (Id., p. 2)  According to these logs, between December 2012 and February 8, 2013, the temperature in Isolation I ranged from 68.6 to 75.8 degrees Fahrenheit in the morning and 64.2 to 78.2 degrees

15

Fahrenheit in the afternoon.  (Id., p. 2; Doc. No.113-2)  Thorne responded to the grievance Plaintiff

filed on January 6, 2013, by performing a check on the system, but found no mechanical problems.

(Id., p. 3) In response to a second grievance Plaintiff filed on January 15, 2013, a maintenance

request was filed, which stated, "no heat is isolation/cell area," and "officer Wright stated the heat

is working ok."  (Id.; Doc. No. 125, p. 109) In response, Thorne performed a second check of the

heating system and work was performed on the system on January 18, 2013.  (Doc. No. 113-3, p. 3;

Doc. No. 125, p. 93)   Thorne also responded to Plaintiff's grievance explaining that the control

board to the heat ventilation unit went out and was not immediately reparable.  (Id., p. 4; Doc. No.

125, p. 93)  Parts were ordered and Thorne was able to install a temperature controller to function

like the control board so that heat would be provided in the interim.  (Id.)  During this time, the

morning temperature on January 18, 2013,for the isolation north wing was 67.5 and the for the south

wing was 69.1.  (Id.)  Additional work was performed on the unit on January 25, 2013, at which time

a temperature controller was installed to operate the heating unit.  (Id.)

In response, Plaintiff claims that the temperature logs were falsified, based on the average

daily temperatures found in the Weather Underground Temperature Almanac (Doc. No. 125, p. 97),

the fact that the back doors are kept open for an hour during the day for yard call, and the fact that

the heating system was not properly operating.

The Court finds no evidence that the temperatures in the cells were unreasonably cold for an

unreasonable length of time so as to find that the conditions of confinement under which Plaintiff

was incarcerated were atypical and significant.  Plaintiff's allegation of falsified records does not

overcome the overwhelming evidence presented by the Defendants.  In addition, the fact that the

Court concludes in the following section that the cold conditions did not violate the Eighth

Amendment, also supports a finding that Plaintiff's due process rights were not violated.

      2)    Eighth Amendment

    Although "[t]he Constitution does not mandate comfortable prisons," humane conditions of confinement include "adequate food, clothing, shelter, and medical care." Farmer v. Brennan, 511 U.S. 825, 832 (1994). In order to support an Eighth Amendment violation, Plaintiff must prove the existence of objectively harsh conditions of confinement, together with a subjectively culpable state of mind by prison officials in condoning or creating the conditions. Choate v. Lockhart, 7 F.3d 1370, 1373 (8th Cir. 1993). The "defendant's conduct must objectively rise to the level of a constitutional violation,...,by depriving the plaintiff of the 'minimal civilized measure of life's necessities.'... The defendant's conduct must also reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner." Revels v. Vincenz, 382 F.3d 870, 875 (8th Cir. 2004) (quoting Rhodes v. Chapman, 452 U.S. 337, 342 (1981) and Estelle v. Gamble, 429 U.S. 97, 104 (1977)). "To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interest or safety...." Wilson v. Seiter, 501 U.S. 294, 298-9 (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)). Furthermore, "discomfort compelled by conditions of confinement, without more, does not violate the amendment." Smith v. Coughlin, 748 F.2d 783, 787 (2d Cir. 1984) (quoting Jackson v. Meachum, 699 F.2d 578, 581 (1st Cir. 1983)).

    Although Plaintiff alleges that he was subject to extremely cold conditions from September to January, he provides absolutely no evidence that he complained of the cold or notified Defendants of a problem prior to December 31, 2012. It also is clear that any problem with the heating was remedied by January 25, 2013. Therefore, the longest possible period of time in which Plaintiff

could have been incarcerated in uncomfortable temperatures would have been about twenty-six days. As noted above, Plaintiff does not overcome the evidence presented by the Defendants that while the indoor temperatures during that time reached as low as 64.2 at one point (according to Thorne), the average temperature during that time was much higher.  (Doc. No.113-12, p. 3) In his affidavit, Defendant Payne stated that during winter months inmates are issued additional blankets, thermal undergarments, hats, and coats, and Plaintiff could have requested additional blankets and/or clothing from laundry officers.  (Doc. No. 113-21, p. 5) Plaintiff also provides absolutely no evidence that any of the named Defendants acted with deliberate indifference to, or in reckless disregard for his needs.  He does not dispute that Defendant Thorne checked the system following both of the grievances Plaintiff filed, worked on the system to maintain heat while a part was ordered, and then eventually repaired the system.  Therefore, the Court finds that Plaintiff's allegations fail to support a finding of an Eighth Amendment violation.

3)      Retaliation

Plaintiff claims that Defendants housed him in punitive isolation under extremely cold conditions beginning on September 28, 2012, in retaliation for the filing of the prior lawsuit against them, on September 14, 2012.  He claims that but for the filing of the lawsuit, no reason existed for the Plaintiff's adverse punitive actions.  However, as Defendants note, Plaintiff does not dispute that he was in continuous violation of the ADC grooming policy, and during the time period in question, was convicted of at least six disciplinary violations.  (Doc. Nos. 113-15, 113-19) Plaintiff also admitted this in his deposition testimony, stating that he never challenged the disciplinary convictions. (Doc. No. 113-13, p. 16)  Defendants point out that the lawsuit which Plaintiff claims to be the catalyst for their actions, Deaton v. Arkansas Department of Correction, 2:12CV00186-

JLH, was never served on the Defendants named in the present action.

In order to support a retaliation claim against Defendants, Plaintiff must allege and prove "that he engaged in protected activity and that defendants, to retaliate for the protected activity, took adverse action against [him] that would chill a person of ordinary firmness from engaging in that activity." Lewis v. Jacks, 486 F.3d 1025, 1028 (8th Cir. 2007). However, a retaliation claim is precluded if the alleged retaliatory conduct violation was issued for the actual violation of a prison rule, by the showing of "some evidence" that the inmate actually committed a rule violation. Hartsfield v. Nichols, 511 F.3d 826, 829 (8th Cir. 2008). And, "a report from a correctional officer, even if disputed by the inmate and supported by no other evidence, legally suffices as 'some evidence' upon which to base a prison disciplinary violation, if the violation is found by an impartial decisionmaker." Id. at 831. See also Sanders v. Hobbs, 773 F.3d 186, 190 (8th Cir. 2014). Finally, Plaintiff must be able to submit affirmative evidence of the retaliatory motive of Defendants in order to avoid summary judgment. See Lewis v. Jacks, 486 F.3d at 1029.

As noted above, Plaintiff does not dispute that he committed the disciplinary violations. Instead, he claims Defendants retaliated against him by not providing him the 48-hour relief periods between his punitive sentences. However, as noted earlier, although Defendants did not physically move Plaintiff to a different cell during the non-punitive periods, Plaintiff's privileges were restored during the non-punitive periods. In addition, the law is clear that even a 135-day stay in punitive isolation does not trigger a due process violation. Plaintiff also provides no evidence that Defendants Burl and Payne acted with retaliatory motives. As noted earlier, these Defendants were not served with the prior lawsuit Plaintiff filed, and Plaintiff provides no specific facts to show that their actions in enforcing legitimate punitive sentences were motivated by retaliation. Defendant

19

Payne explained in his affidavit that during the times Plaintiff was not on punitive status, he was given his property and treated no differently than he would have been if he were housed in another area. (Doc. No. 113-21, p. 3) When it was discovered that Plaintiff did not receive his property for five days during one of the non-punitive periods, he was released from punitive five days early and given his property.  (Id.)  In addition, Payne stated that during that time it would not have been unusual for Isolation I, where Plaintiff was housed, to be used for relief periods because Plaintiff was on single man status and Isolation 1 contains single man cells.  (Id., p. 4)  During those time periods, not all of the isolation units are used for punitive purposes.  (Id.)  Therefore, absent additional evidence of retaliatory motives by Defendants Payne and Burl, the Court finds as a matter of law that Plaintiff does not support this claim for relief.  In addition, given this Court's finding of no Eighth Amendment violation with respect to Plaintiff's extreme cold allegation, the Court finds no support for his retaliation claim based on the cold temperatures.

### D.      Retaliatory Transfer

Plaintiff wrote Defendant May a letter complaining about his stay in isolation, the cold temperatures, and problems with utilizing the grievance procedure.  May responded to him on May 16, 2013, stating he reviewed his complaints but found no merit to them.  (Doc. No. 113-8)  He also stated that he would review the grievance policy with his staff and provide training to those who had not yet received such.  (Id.)  Deaton was then transferred to the Varner Super Max Unit on July 8, 2013 (Doc. No. 113-4).  Plaintiff claims that this transfer was made solely to retaliate against him for writing the letter and complaining about the inadequate grievance procedure.

To prevail on a claim for retaliatory transfer, Plaintiff must show "that impermissible retaliation was 'the actual motivating factor for his transfer.'"  Cornell v. Woods, 69 F.3d 1383,

1387-88 (8th Cir. 1995) (other citations omitted).  In addition, "[g]enerally, more than a temporal connection ... is required to present a genuine factual issue on retaliation."  Kipp v. Missouri Highway and Transp. Com'n, 280 F.3d 893, 897 (8th Cir. 2002) (quoting Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1136 (8th Cir. 1999).  As noted above, Plaintiff must submit affirmative evidence of a retaliatory motive by the Defendants.  In this case, however, aside from the fact that he was transferred within a month of writing the letter, Plaintiff provides no such evidence. Defendant Payne noted in his affidavit that he was transferred away from the EARU in May, 2013, and was not involved in the decision to transfer Plaintiff.  (Doc. No. 113-21, p. 6.)  The transfer itself was signed and approved by Warden Mills as part of a swap for another inmate.  (Doc. Nos. 113-4; 113-13, p. 24).  Defendant Burl stated in his discovery responses that Warden Mills approved the transfer (Doc. No. 113-5, p.2)  And Defendant Ball stated in his discovery responses that he had no prior knowledge of the transfer and was not responsible for it.  (Doc. No. 113-6, pp. 2-3)[2]

Therefore, the Court finds as a matter of law that Plaintiff's claim for retaliatory transfer should be dismissed.

## IV.    Conclusion

IT IS, THEREFORE, RECOMMENDED that:

1.    Defendants' Motion to Dismiss (Doc. No. 108) be GRANTED, and Plaintiff's RLUIPA claim be DISMISSED.

---

[2]In his deposition testimony, Plaintiff stated that Defendant Burl knew Plaintiff was seeking an injunction about the grievance process and "set up Mr. Mills" to initiate the transfer. (Doc. No. 113-13, p. 24)  He added, however, that he had no proof of this, and he was "just speculating on that."  (Id., p. 25)  He also claims that Defendant Jackson, who was employed at the Varner Super Max Unit, told Plaintiff when he arrived there that he personally brought him there.  (Id., p. 26) (Plaintiff did not name Defendant Jackson in any grievances he filed - therefore, he cannot assert this claim against him.)

2.      Defendants' Summary Judgment Motion (Doc. No. 113) be GRANTED.

3.      Defendant Jackson be DISMISSED without prejudice from Plaintiff's Complaint, for

failure to exhaust his administrative remedies.

4.      All other Defendants be DISMISSED with prejudice.

IT IS SO RECOMMENDED this 24th day of July, 2015.

_____

JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE